UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PHILLIP HARDY,

                Plaintiff,                      Case No. 12-cv-15329

v.                                  Honorable Thomas L. Ludington

ROBERT NAPEL,

                Defendant.

_____/

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR BOND, AND DENYING A CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On November 5, 2009, a jury in the Tuscola County Circuit Court convicted Phillip Hardy of two counts of second degree child abuse. On January 19, 2010, Hardy was sentenced to concurrent terms of 18–48 months' imprisonment—one term for each count of conviction.

After he was sentenced, Hardy filed a motion for a new trial alleging that his counsel provided constitutionally ineffective assistance in several respects. The trial court agreed and granted the motion. Both Hardy and the State of Michigan filed appeals, and the Michigan Court of Appeals reversed the trial court's grant of a new trial, rejected Hardy's claims, and remanded the case for reinstatement of his convictions and sentences. *See People v. Hardy*, No. 296509, 2011 WL 4810772 (Mich. Ct. App. Oct. 11, 2011) (per curiam).

After the Michigan Supreme Court denied Hardy's application for leave to appeal, he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hardy also filed a motion for bond on October 18, 2013. All pretrial matters in this case were referred to

United States Magistrate Judge Paul J. Komives under 28 U.S.C. § 636(b), and on January 29, 2014, Judge Komives issued a report recommending that Hardy's motion and his petition be denied. As contemplated by § 636(b)(1), Hardy filed objections to Judge Komives' report and recommendations.

Upon review, Hardy's objections are without merit and will be overruled; Judge Komives' report and recommendations will be adopted, Hardy's motion for bond will be denied, and his petition for habeas relief will be denied.

## I.

Hardy's convictions arose from the abuse of his adopted minor children, Phillip and Elizabeth. Hardy was tried jointly with his wife, who was convicted of the same charges and received the same sentence. The Michigan Court of Appeals briefly summarized the facts underlying the child abuse as follows:

> Phillip and Sheila Hardy are husband and wife. They were originally the foster parents and later the adoptive parents of the two minor children that were the victims in the underlying criminal action for second-degree child abuse. The most pertinent allegations of abuse included assertions that the children had been locked in a bedroom in the Hardy home, without adult supervision while the Hardys were at work, and that the children had been deprived of food as a means of punishment by the Hardys for unacceptable behavior. Additional allegations existed regarding the sanitary conditions of the home due, in part, to the children urinating and defecating in the locked bedroom, as they were unable to access a bathroom. The incident that brought the children to the attention of the Department of Human Services ("DHS") and which led to the current charges involved the children having broken out of the locked room and approaching neighbors asking for food.

*Hardy*, 2011 WL 4810772, at *1. A more thorough explanation of the factual background underlying Hardy's convictions is provided in Judge Komives' report. *See* Report & Rec. 3–15, ECF No. 18.

## A.

Hardy's petition, covering 130 pages, asserts four grounds for habeas relief. First, he claims ineffective assistance of trial counsel, who Hardy argues did not: "present an adequate defense," "conduct [a] full and complete investigation," seek "expert witnesses," "make necessary objections," "suppress inadmissible evidence," "object to prosecutorial misconduct," "prepare[] for trial," and "communicate with petitioner." Pet'r's Petition 6, ECF No. 1. Second, Hardy claims the trial court erred by allowing joint representation because counsel "never explained to [Hardy] and his [wife] about the possibly [sic] of a serious conflict of interest by joint representation by the same attorney." *Id*. at 7. Third, Hardy argues the trial court should have severed his trial from his wife's trial. *Id*. at 9. With his fourth and final claim, Hardy contends that the Michigan Court of Appeals unreasonably applied the law "when it erroneously retried the facts . . . when it reversed the trial court decision . . . granting petitioner a new trial . . . ." *Id*. at 10.

On October 18, 2013, Hardy filed a motion for bond. *See* Pet'r's Mot., ECF No. 15. According to Hardy, his "case is meritorious," he "will have completed his minimum sentence on October 25, 2013," and bond should be granted because "[h]e has a high probability of parole guideline score, no misconducts, good job reviews while incarcerated, standing job offers upon release, . . . no prior criminal history. . . . a wife and family, strong family and community support, is not a flight risk, and is not a threat to public safety." *Id*. at 1.

Judge Komives addressed each of the claims contained in Hardy's petition and found them to be without merit. Judge Komives also addressed Hardy's motion for bond, which he found to be similarly meritless. So Judge Komives filed a report recommending that Hardy's petition for habeas corpus and motion for bond be denied.

**B.**

Title 28 U.S.C. § 636(b)(1) provides that a party may "serve and file written objections" to a United States Magistrate Judges' report and recommendations. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*

As contemplated by § 636, Hardy listed thirty-eight objections to Judge Komives' report and recommendations. *See* Pet'r's Objs., ECF No. 21. Many of those objections relate directly to factual findings in Judge Komives' report. For example, Judge Komives concluded that the failure to call as a witness Hardy's son, Richard Hardy, did not prejudice Hardy's defense because—in part—Richard's proposed testimony (taken during an evidentiary hearing during post-trial proceedings) "was contradicted not only by the victims, but also by the testimony of other observers and, importantly, photographs taken of the home." Report & Rec. 28. Judge Komives indicated that, during the evidentiary hearing "Richard testified that [Hardy] never struck Phillip with a belt, but petitioner admitted to doing so at trial." *Id.* at 29 (citation omitted). Hardy objects, however, and argues that Richard's testimony (that he never saw Hardy strike Phillip with a belt) was "not a contradiction" because "spankings with a belt only occurred, at most, three times in a six year time period. Extremely rare." Pet'r's Objs. ¶ 11.

Of course, under § 2254, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Nichols v. Perini*, 818 F.3d 554, 557 (6th Cir. 1987). So for each of his factual objections, Hardy must present "clear and convincing evidence" to demonstrate that any factual determinations made by the state court was wrong.

Hardy also listed objections that do not pertain specifically to the facts. With his sixteenth objection, Hardy claims that "[t]here were not witnesses other than co-defendants call [sic] to testify for the defense. . . . That no other witnesses were called for the defense caused multiple issues." Pet'r's Objs. ¶ 16. He argues "[t]here were available corroborating witnesses and evidences. They were simply ignored by counsel." *Id*. Although it is not entirely clear what portion of Judge Komives' report and recommendations this objection pertains to, any portion of Judge Komives' report to which a proper objection is made will be subjected to de novo review. *See* § 636(b)(1)(C).

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), governs all habeas applications filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326−27 (1997). In this case, Hardy's habeas application was filed in December 2012; therefore, his petition is governed by AEDPA.

AEDPA created new standards for review of state court decisions under 28 U.S.C. §2254(d). Paragraph (d), as amended, reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under §2254(d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide the basis for relief: (1) the "contrary to" clause or (2) the "unreasonable application" clause. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

Under the "contrary to" clause, a federal court may grant habeas relief in two different ways. First, if the state court arrives at a conclusion that contradicts the governing law set forth in Supreme Court cases. *Id.* Second, if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* As the Supreme Court explains, the words "contrary to" should be construed to mean "diametrically different, opposite in character, or mutually opposed." *Id*. at 405. Accordingly, "the state court's decision must be substantially different from . . . [relevant Supreme Court precedent]." *Id.*

A federal court may grant habeas relief under the "unreasonable application" clause in two different ways as well. First, "if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Id*. at 413. Second, if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context where it should apply. *Williams*, 529 U.S. at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court's decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 409−11. The Supreme Court explains that the writ of habeas corpus "is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

- 6 -

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87.

When analyzing whether a state court's decision is "contrary to" or an "unreasonable application" of clearly established federal law, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412. However, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). In addition, a court may not look to lower federal court decisions to formulate the relevant rule of law; but, it may look to lower federal courts decisions to assess the reasonableness of the state court's resolution of an issue. *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004). Accordingly, "[u]nder AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court,' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)) (emphasis in original).

## III.

As indicated above, Hardy has filed thirty-eight distinct objections to Judge Komives' report and recommendations. Each will be addressed in turn.

## 1.

In his first objection, Hardy claims that Judge Komives did not grasp the full range of his ineffective assistance of counsel claim. He indicates that Judge Komives found "counsel was

ineffective for failing to investigate and present various witnesses," but Hardy asserts "[t]hat is only a very small part of the trial court's findings." Pet'r's Objs. ¶ 1. According to Hardy, "[t]his is not a case of counsel failing to call one or two witnesses but a case where . . . 'counsel completely abdicated his duty to conduct a pretrial investigation and left it entirely up to [petitioner] himself to conduct pretrial investigation.'" *Id.* (brackets in original) (quoting *United States v. Gray*, 878 F.2d 702, 709 (3d Cir. 1989)).

In the first claim of his petition—concerning ineffective assistance of counsel—Hardy listed the different reasons counsel was deficient:

> The lawyer failed to present an adequate defense, never conducted a full and complete investigation, never interviewed or called any of the known available witnesses before and during trial, never sought expert witnesses to aid the court and jury to scientific evidence . . . where the kids originally came from backgrounds of suicidal, abusive, neglectful conditions . . . failed to make necessary objections, failed to suppress inadmissible evidence, failed to object to prosecutorial misconduct to personal beliefs and making statements not into evidence, counsel never was prepared for trial and failed to communicate with petitioner.

Pet'r's Pet. 6.

In addressing Hardy's ineffective assistance claim, however, Judge Komives indicated that "[Hardy] first contends that his trial counsel was ineffective for failing to investigate and call witnesses, and for failing to seek severance of his trial from that of his wife." Report & Rec. 24. So it appears that Judge Komives did not address each and every instance that Hardy claims constitutes ineffective assistance.

Nevertheless, Judge Komives' recommendation will be followed on this issue and Hardy's claim for ineffective assistance related to trial counsel will be dismissed because the additional issues Hardy raises are all procedurally defaulted and Hardy cannot demonstrate cause and prejudice to excuse the defaults.

A federal habeas petitioner like Hardy can procedurally default a claim by "failing to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (quoting *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000)). The Supreme Court has indicated that when state prisoners default federal claims in state court, "*habeas corpus review of the claims is barred* unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Lundgren*, 440 F.3d at 763 (emphasis in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)).

Here, there is no question that the Michigan state courts stood ready to address Hardy's ineffective assistance of trial counsel claims; he presented such claims during his direct appeal. *See Hardy*, 2011 WL 4810772, at *3 ("Specifically, the Hardys contend that counsel was ineffective for failing to interview or investigate and call as a witness their elder son, who was not residing in the home at the time of the event leading to the removal of the children from the home by DHS."). Indeed, Hardy claimed that trial counsel was ineffective for failing to interview or investigate and call as a witness Richard Hardy, that counsel was ineffective for jointly representing both Hardy and his wife (his co-defendant), and that counsel was ineffective "for the failure to seek severance of their trials." *Id*. at *3, *4. Thus, Judge Komives addressed the same ineffective assistance of counsel claims that Hardy exhausted in state court during his direct appeal (by presenting those claims to the Michigan state courts). And so Judge Komives addressed only those claims procedurally ripe for habeas review by a federal court.

- 9 -

The other issues Hardy raises in his petition—that trial counsel failed to make necessary objections, failed to communicate adequately, and failed to present an adequate defense, for example—were not presented to the Michigan courts, although they could have been. So these claims have been procedurally defaulted because Hardy "fail[ed] to raise th[e] claim[s] before the state courts while state-court remedies [were] still available." *Lundgren*, 440 F.3d at 763; *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (concluding ineffective assistance of counsel claims were procedurally defaulted when habeas petitioner argued defense counsel failed to investigate and present expert testimony but "focused solely on defense counsel's failure to present an insanity defense" on direct appeal in the state courts).

Hardy may overcome his procedural defaults "only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in [his] case." *Lundgren*, 440 F.3d at 763 (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977)). Notably, "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren*, 440 F.3d at 764 (citation omitted).

Nowhere in his petition, or in his objections, does Hardy explain why he did not assert these various ineffective assistance claims on direct appeal. He does not even attempt the conclusory assertions that the Sixth Circuit warned about in *Lundgren*. Moreover, demonstrating "that the failure to consider [his] claims will result in a fundamental miscarriage of justice" requires Hardy to demonstrate that he is "actually innocent." *Id.*; *see also Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (indicating that the miscarriage of justice exception could alternatively be termed the "actual innocence" exception). Hardy does not argue he is actually innocent of the

crimes for which he was convicted, and such a result is unlikely given the Michigan Court of Appeals' conclusion that the evidence against him was "overwhelming." *Hardy*, 2011 WL 4810772, at *2.

Accordingly, the fact that Judge Komives did not address each of Hardy's alleged instances of ineffective assistance is immaterial. The claims are procedurally defaulted, without a showing of cause and prejudice to excuse the default, and those claims will not be considered by this Court in the first instance. *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (citation omitted).

**2.**

With his second objection, Hardy claims that another section of Judge Komives' report "contends counsel was ineffective for 'failing to investigate and present witnesses,' " but according to Hardy, this is "only a portion" of his complaint and he "direct[s] the Court to Objection 1" in further support of his ineffective assistance claim. Pet'r's Objs. ¶ 2. As explained above, however, each of Hardy's ineffective assistance claims—aside from the three specific issues he raised on direct appeal—are procedurally barred. Because Hardy offers no explanation to demonstrate cause and prejudice to excuse the default, the fact that Judge Komives did not consider the additional claims is of no import. The claims are barred and will not be considered. This objection will be overruled.

**3.**

Third, Hardy claims that he filed a reply brief that "is not mentioned in [Judge Komives'] report." Pet'r's Objs. ¶ 3. But according to Hardy, he filed a reply brief on July 19, 2013. *Id.* The only filing that matches Hardy's description, however, is an amended cover page he filed on August 6, 2013. *See* Am. Cover Page, ECF No. 14. And that cover page filing includes only one

page of text (aside from the cover page itself), and that one page does little to further any of Hardy's arguments. *See id*. at 2. The Court sees no error in Judge Komives' failure to reference this document in his report and recommendation, and Hardy's third objection will be overruled.

### 4.

Next, Hardy takes issue with "several issues in the Factual Background section" which he claims "are both inaccurate and prejudicial." Pet'r's Objs. ¶ 4. But what Hardy really takes issue with is that these factual issues, which apparently arose during trial, "were left uncontrasted by trial counsel." *Id*. Again, however, only the ineffective assistance claims Hardy actually presented to the Michigan courts can be considered here, absent a showing of cause and prejudice to excuse the default. Hardy does not make such a showing, and his argument that various factual issues should have been contested by trial counsel will not be considered. This objection is without merit.

### 5.

Hardy's fifth objection is that "[t]here was no motion by counsel to exclude mention of unadjudicated, unfounded allegations of prior bad acts." *Id*. ¶ 5. This objection will be overruled because the claim was never presented to the Michigan state courts and is therefore procedurally defaulted.

### 6.

With his sixth objection, Hardy argues that "a motion to exclude the photographs" was not filed by trial counsel. *Id*. ¶ 6. Like Hardy's fifth objection, this claim is procedurally defaulted and the corresponding objection will be overruled.

**7.**

In his seventh objection, Hardy takes issue with Judge Komives' conclusion that Richard Hardy probably "would not have been available to testify at trial" because "[i]t was undisputed . . . that Richard was deployed in the Army at the time of trial . . . ." Report & Rec. 27. Hardy asserts, however, that "Richard Hardy was not deployed at the time of trial." Pet'r's Objs. ¶ 7. But Richard himself testified during an evidentiary hearing, held by the trial court concerning Hardy's motion for a new trial, that he was not available to testify in Hardy's trial:

> Q:     Okay. And did anyone from the defense side, any attorney or attorney's office, contact you in relation to testifying in the trials against your parents?
>
> A:     I don't remember that.
>
> Q:     Okay. Were you available to testify at that time?
>
> A:     No.

Evid. Hr'g Tr. vol. II, at 28, *attached as* Rule 5 Materials Ex. 9, ECF No. 17. This objection is without merit and will be overruled.

**8.**

Next, Hardy objects to another factual conclusion contained in Judge Komives' report. Judge Komives indicated that Richard's testimony "would not have been particularly compelling" because, in part, "there is no dispute that Richard was no longer living in the home at the time of the events leading to the charges." Report & Rec. 28. Hardy objects and argues that "Richard Hardy did live in the home until November 12, 2007 only six days before the incident causing the police and DHS involvement." Pet'r's Objs. ¶ 8. Hardy's assertion only confirms Judge Komives' factual finding. This objection has no merit and will be overruled.

- 13 -

**9.**

Hardy's ninth objection also concerns Richard's testimony. Judge Komives indicated that Richard's testimony "regarding the living conditions in the home was contradicted" in many respects by the facts elicited at trial, including his testimony that "the vent in Elizabeth's room was not boarded over." Report & Rec. 28. Hardy claims that Richard's testimony corroborated his own, and thus "was not a contradiction." Pet'r's Objs. ¶ 9. But here, Hardy does not address the actual thrust of Judge Komives' finding. Judge Komives did not assert that Hardy's testimony was contradicted by Richard's, only that Richard's testimony was not compelling because it was contradicted by "the victims . . . other observers and, importantly, photographs taken of the home." Report & Rec. 28. Hardy's objection misses the point; it will be overruled.

**10.**

With his tenth objection, Hardy claims that Richard's "testimony that there was no lock on the door prior to him leaving the home confirms Petitioner's testimony that the lock was not on the door until after Richard left home." Pet'r's Objs. ¶ 10. Here, Hardy seems to take issue with Judge Komives' assertion that Richard's testimony was unreliable because he was not around at the time of the incidents that led to Hardy's convictions. But Hardy's objection, once again, only serves to confirm that Judge Komives was correct; Richard was not aware of what the conditions were like for Hardy's adopted children, and the fact that he was not called as a witness did not affect the outcome of Hardy's trial. This objection is meritless.

**11.**

Next, Hardy objects to Judge Komives' conclusion that "Richard testified that petitioner never struck Phillip with a belt, but petitioner admitted to doing so at trial." Report & Rec. 29. Again, Judge Komives was simply indicating why the failure to call Richard as a witness did not

harm the defense, for Richard had little knowledge concerning Hardy's treatment of his adopted children. Hardy's objection that "spankings with a belt only occurred, at most, three times in a six year period," Pet'r's Objs. ¶ 11, again only confirms that Richard's testimony, plagued by a lack of first-hand knowledge, contradicted Hardy's. Judge Komives was thus correct in noting as much. This objection will be overruled.

## 12.

Hardy next argues that the trial court admitted testimony and photographs that were inadmissible, and "[t]o admit them after the fact is unreasonable." Pet'r's Objs. ¶ 12. This claim was not presented to the state courts, is procedurally defaulted, and will not be considered. Hardy's related objection, asserting the claim, will be overruled.

## 13.

Hardy argues that "[t]he expert medical testimony was never challenged at trial with readily available evidence showing that both children were well above average weight proportion of height for their age." *Id.* ¶ 13. This claim was not presented on direct appeal, it is procedurally defaulted, and it will not be considered. Hardy's thirteenth objection is without merit.

## 14.

With his fourteenth objection, Hardy indicates that "[t]he court mentions corporeal punishment as if spanking itself is a crime." *Id.* ¶ 14. This objection has nothing to do with Judge Komives' report. Judge Komives did not conclude that spanking is a crime; only that Hardy's habeas petition was without merit. This objection will be overruled.

## 15.

Hardy next contends that "photographs have been mentioned throughout the Report and Recommendation as 'proof' that abuse and neglect took place," but—according to Hardy—the

- 15 -

photographs "were obtained through an illegal search and should have been quashed . . . ." *Id*. ¶ 15. This claim, that the photographs were admitted improperly, was not raised before the state court. Accordingly, the claim is procedurally barred absent cause and prejudice, which Hardy has not demonstrated. This objection is without merit.

### 16.

With his sixteenth objection, Hardy identifies an issue that is ripe for consideration. He asserts that "[t]here were available corroborating witnesses and evidences" that should have been presented but were "ignored by counsel." *Id*. ¶ 16. This claim was presented on direct appeal, where Hardy argued that "counsel was ineffective for failing to interview or investigate and call as a witness their elder son . . . ." *Hardy*, 2011 WL 4810772, at *3.

Judge Komives concluded that Richard's testimony, and that of Hardy's "neighbor and employer," would have offered little to the case. *See* Report & Rec. 29 n.2. According to Judge Komives, Richard's testimony would not have been helpful because he had little firsthand knowledge of Hardy's treatment of his children, and did not live in the home when the incidents that led to Hardy's conviction occurred. *Id*. at 29. Similarly, Judge Komives indicated that Hardy's neighbor and employer "would have offered little to the case" because "[t]hey could have testified only to [Hardy's] treatment of the children while in their presence. They could not have offered any testimony relating to the conditions in the home, the use of corporal punishment, or the denial of food as a form of punishment within the home." *Id*. at 29 n.2.

Likewise, the Michigan Court of Appeals concluded that "it is highly unlikely that the evidence or testimony omitted would have had a substantial or determinative impact on the outcome of trial given the strength of the case presented by the prosecution." *Hardy*, 2011 WL 4810772, at *3. This conclusion is neither "contrary to" nor an "unreasonable application" of

clearly established federal law. Judge Komives' conclusion that the failure to call various defense witnesses did not matter, given that the overwhelming evidence against Hardy, was sound. The Michigan Court of Appeals laid out the prosecution's evidence against the Hardys, which was indeed overwhelming:

> As recognized by the trial court "overwhelming evidence" was submitted to demonstrate that the minor children were detrimentally impacted by the Hardys' parenting. Photographs were submitted verifying the despicable living conditions for the children and officers involved in the investigation testified regarding the stench of urine in the children's living area. The Hardys did not deny either the existence of locks on the bedroom door or that the minor children had been left without supervision and locked in the room while both parents were at work. A psychologist that had previously evaluated one of the children testified and opined that the emotional and psychological condition of that child had deteriorated under the Hardys' care. The current foster mother for the children described hoarding of food by the children and their urinating and defecating in their bedrooms, which was consistent with behaviors exhibited by victims of the type of abuse alleged to have occurred.

*Id*. at *2. Hardy's objection, in which he indicates that other defense witnesses should have been called, or other evidence should have been offered, does not overcome the force of the Michigan Court of Appeal's decision. Hardy was not prejudiced by these omissions, even if they do represent ineffective assistance. This objection will be overruled.

**17.**

The next issue Hardy raises concerns the trial court's instruction to the jury. He argues that the trial court's instructions were "tantamount to telling the jury to disregard" his testimony, and that of his wife, because the judge told the jury to question whether each "witness ha[s] any special reason to tell the truth or any special reason to lie" while evaluating his or her testimony. Pet'r's Objs. ¶ 17. As with so many others, this claim was not presented to the Michigan state courts and it is procedurally defaulted. Because Hardy makes no demonstration of cause or prejudice to excuse the default, the claim cannot be countenanced. This objection is without merit.

**18.**

Hardy claims that trial counsel was also ineffective for "fail[ing] to object to prosecution's burden shifting tactics during rebuttal." *Id*. ¶ 18. This claim is procedurally defaulted because it was not raised on direct appeal. Hardy's related objection will be overruled.

**19.**

Next, Hardy indicates that the trial court judge had letters from his older sons undermining the prosecution's theory that "the Hardy minors interacted inappropriately with each other and with others," and "to ignore such evidence and potential testimony is unreasonable." *Id*. ¶ 19. Hardy's accusation that the trial judge suppressed this evidence was never presented on direct appeal and is thus procedurally defaulted. If Hardy's accusation actually challenges trial counsel for failing to interview and elicit testimony from the elder Hardy boys, that issue has been addressed at length above. Either way, the objection is without merit and will be overruled.

**20.**

With his twentieth objection, Hardy indicates that Susan Osborn saw the Hardy minors often and "witnessed them being fed regularly by their father . . . ." *Id*. ¶ 20. Hardy asserts that "[h]er testimony along with that of other proposed witnesses would have cast some doubt onto the findings of or at least the causation of the findings of Mr. Christensen." *Id*. But again, the state court was correct when it concluded that the failure to call other witnesses, given the strength of the case against Hardy, was immaterial. This objection is without merit and will be overruled.

**21.**

In his next objection, Hardy again indicates that neither prosecution expert was "confronted with any of the readily available evidence to refute either their findings or to show their bias." *Id*. ¶ 21. As with objection 20, and for the same reasons, this objection is without merit and will be overruled.

**22.**

Hardy's twenty-second objection is the same. "Mr. Christensen's findings are not without considerable opposing views." *Id*. ¶ 22. But, once again, the presence of contradictory testimony is unavailing in light of the state appellate court's finding regarding the strength of the case against Hardy. Thus, like all of Hardy's other similar objections, this argument is without merit and will be overruled.

**23.**

Next, Hardy objects to one of the state court's findings. "The appeals court stated that Petitioner 'provided no substantive proof regarding the existence of the alleged evidence or verifying the content of the purported testimony to be offered.'" *Id*. ¶ 23. This objection does not relate in any relevant manner to Judge Komives' report. Moreover, the state court's findings of fact "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Nichols v. Perini*, 818 F.3d 554, 557 (6th Cir. 1987). Hardy has not shown otherwise by clear and convincing evidence. This objection will be overruled.

**24.**

Hardy next claims that trial counsel failed to elicit the fact that stress is "one of the potential causes for elevated ALT and AST levels that was definitely a factor at the time of his first evaluation of the children." Pet'r's Objs. ¶ 24. This claim was not presented on direct

appeal, it is procedurally defaulted, and Hardy has not demonstrated cause and prejudice to excuse the default. The objection will be overruled.

**25.**

Hardy also argues that "[m]edical expert testimony was based on insufficient information" and "[p]rior medical history and medical personnel more familiar with the Hardy minors would have proven invaluable." *Id*. ¶ 25. This is another attack on trial counsel for failing to investigate and present witnesses. As previously stated when addressing Hardy's prior similar claims, the overwhelming evidence demonstrating Hardy's guilt renders this objection without merit. It will be overruled.

**26.**

Hardy's twenty-sixth objection is that trial counsel "never made inquiry into whether there were any physical symptoms of malnutrition." *Id*. ¶ 26. Once more, this is a claim of ineffective assistance that is procedurally defaulted because Hardy did not raise the claim on direct review. This objection will be overruled.

**27.**

Next, Hardy challenges the *Strickland* standard governing ineffective assistance of counsel claims. He argues that "[t]he *Strickland* standard does not require that the Petitioner meet the burden of proof of a reasonable probability of a different outcome by a 'preponderance of the evidence.' To require that is unreasonable." *Id*. ¶ 27. But Judge Komives did not apply such a requirement, even if it would be "unreasonable" to do so. Instead, Judge Komives indicated that, "[w]ith respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, 'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Report

& Rec. 25 (citation omitted). Thus, Hardy's objection misstates the requirements of Strickland and the manner in which it was applied by Judge Komives. Thus, the objection is without merit. It will be overruled.

**28.**

Hardy's twenty-eighth objection, in contrast with the majority of his objections, concerns an issue that was presented to the state courts and then reviewed by Judge Komives.

Hardy claims that it was ineffective assistance of counsel for trial counsel to allow "joint representation and joint trial" because it prevented counsel from objecting to various comments by the Prosecutor. Pet'r's Objs. ¶ 28. Hardy asserted ineffective assistance claims relating to joint representation and joint trials on direct appeal. *See Hardy*, 2011 WL 4810772, at *3–4.

But the Michigan Court of Appeals' conclusions on these two issues—joint representation and severance for trial—are not contrary to or an unreasonable application of federal law. As to joint representation, the Court of Appeals held Hardy did not suffer prejudice as a result of joint representation, and therefore his claim was without merit:

> In the circumstances of this case, there is no demonstrable conflict of interest. Both parties retained counsel and denied culpability. Their testimony and trial strategy were not in conflict and, although minor discrepancies may have existed in their testimony, overall their positions and theories of the case completely coincided. As no conflict of interest was demonstrated, any assertion of error premised on joint representation is unavailing.

*Hardy*, 2011 WL 4810772, at *4. Hardy has not demonstrated that this conclusion was contrary to, or constitutes an unreasonable application of, federal law.

Neither has Hardy shown the Michigan Court of Appeals' conclusion related to severance was unreasonable. The court concluded as follows: "As the Hardys' defenses were fully consistent and in concert with one another and were neither mutually exclusive nor

irreconcilable, there exists no basis or requirement for severance of their trials." *Id*. His objection is without merit and will be overruled.

**29.**

Hardy's next objection relates to Judge Komives' conclusion that a certificate of appealability is not warranted here. Hardy argues that to say the issues involved are not debatable is "to imply" that the trial judge, "a trial court judge with thirty-two years of experience on the bench is not as reasonable as a 'reasonable jurist.'" *Id*. ¶ 29. But what Hardy does not address is the fact that the trial judge did not determine that the Michigan Court of Appeal's conclusions were unreasonable; it was the Court of Appeals that determined the trial judge's conclusions to be incorrect. The proper consideration for a certificate of appealability is whether reasonable jurists could conclude that *this Court's* conclusions related to the Court of Appeals opinion are subject to debate. They are not, and a certificate of appealability will not be granted. This objection will be overruled. Additionally, the Court will deny Petitioner permission to proceed on appeal *in forma pauperis. See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24 (a).

**30.**

In his thirtieth objection, Hardy notes that "[t]he issue of oral arguments was not addressed even though they were requested with [his] amended Reply Brief cover page." *Id*. ¶ 30. As he claims, Hardy's amended cover page does request oral argument on his petition. *See* Pet'r's Am. Cover Page 1. However, this Court "will not hold a hearing . . . where a person is in custody unless the judge orders a hearing." E.D. MICH. LR 7.1(f)(1); *see also Sockman v. Berghuis*, No. 10-14860, 2012 WL 137828, at *1 (E.D. Mich. Jan. 18, 2012). Here, oral

argument is not necessary because Hardy's arguments are without merit. This objection is likewise without merit.

**31.**

Hardy's next objection relates again to trial counsel's performance. He indicates that "[t]rial counsel's strategy was 'doing the best I could,'" which Hardy asserts is "not trial strategy" but "negligence in the extreme." Pet'r's Objs. ¶ 31. As explained at length above, see § III.1, however, Hardy's ineffective assistance claims are either meritless, because they don't meet the standard for § 2254 relief, or procedurally defaulted. This objection is also without merit and will be overruled.

**32.**

Hardy's thirty-second objection is no different. He claims that trial counsel "adopted the attitude that his clients would and should be convicted and acted accordingly, putting no effort into preparing for trial other than showing up." *Id.* ¶ 32. But again, even if counsel was ineffective, as the Michigan Court of Appeals concluded, it was not significant to the result of the trial because the evidence against Hardy was overwhelming. That conclusion is not contrary to clearly settled federal law, and Judge Komives' conclusion was proper. This objection will be overruled.

**33.**

Hardy's next objection relates to trial counsel's alleged failure to check whether the trial court had the technology to allow Richard Hardy to testify remotely; apparently raising another ineffective assistance objection. This claim was never presented to the Michigan courts, however; it is therefore procedurally defaulted, cannot be considered on habeas review absent

cause and prejudice (which Hardy has not demonstrated), and the related objection is without merit.

**34.**

With his thirty-fourth objection, Hardy claims that trial counsel was ineffective because he failed to prepare and was then "completely unable to subject the prosecution's case to 'meaningful adversarial testing[.]'" *Id*. ¶ 34. This claim was arguably presented before the Michigan Court of Appeals, which noted that "[t]he Hardys contend that counsel was ineffective because he . . . did not sufficiently prepare . . . ." *Hardy*, 2011 WL 4810772, at *1. But the court then held that "overwhelming evidence" was submitted against Hardy to demonstrate that his minor children were detrimentally impacted by his parenting. *Id*. at *2. Because Hardy "failed to demonstrate the requisite component of prejudice" related to his "assertion of ineffective assistance of counsel, the trial court erroneously granted a new trial." *Id*. at *3. This conclusion was not contrary to or an unreasonable application of federal law. Hardy's objection to Judge Komives' similar recommendation—that Hardy's ineffective assistance claims should be dismissed—will thus be overruled.

**35.**

Hardy's thirty-fifth objection also relates to trial counsel's failure to call Richard Hardy as a witness. *See* Pet'r's Objs. ¶ 35. But this issue has already been addressed multiple times. The Michigan Court of Appeals' conclusion that Hardy was not prejudiced by counsel's failure to call Richard was not unreasonable. This objection will be overruled.

**36.**

The next objection Hardy raises relates to the prosecution's experts in the case. The prosecution first called Daniel Tackabury, M.D., a physician from Michigan with about a

decade's worth of experience. *See* Trial Tr. vol. II, at 68, *attached as* Rule 5 Materials Ex. 4. Dr. Tackabury testified that, in his opinion, both Hardy minors were of extremely small stature, which could be caused by consistent malnutrition. *Id*. at 76–77. He also testified that the Hardy minors exhibited other physical symptoms of malnutrition and mistreatment. *Id*. at 75–77. The prosecution's second expert, Randall Christensen, M.S.—a clinical psychologist—testified that both Hardy minors had psychological and behavioral problems related to living under Hardy's care. *Id*. at 98, 112.

Hardy claims that neither expert had the children's "prior histories," which, he argues, "may have had a huge impact on [the experts'] opinions." Pet'r's Objs. ¶ 36. Hardy goes on to indicate that his attorney should have "investigat[ed] the histories" and then "present[ed] them at trial," and that the failure to do so was ineffective assistance. *Id*. And, just as Hardy suggests, both experts indicated additional background information concerning the Hardy minors would have been helpful. *See* Trial Tr. vol. II, at 112, 125.

Of course, Hardy never raised this claim before the Michigan state courts, and thus it is arguably procedurally defaulted. Even if it was not, the claim is without merit. Dr. Tackabury and Mr. Christensen were the prosecution's witnesses, and although Hardy's counsel did not locate the background history Hardy claims would have been so powerful (a disputed assertion to be sure), he did make it clear on cross examination that both experts' conclusions were made without that information. *Id*. Moreover, Hardy's counsel got both experts to admit that this additional information would have been helpful, raising the implication that their opinions lacked foundation—exactly the type of cross examination one would expect from an experienced defense attorney facing expert testimony that is difficult to rebut. Whether this claim is procedurally defaulted or simply without merit, Hardy's objection will be overruled.

**37.**

Next Hardy again takes issue with the fact that his counsel did not ask for an adjournment "to allow for Richard's appearance." Pet'r's Objs. ¶ 37. This claim was not presented to the Michigan state courts and is therefore procedurally defaulted. Hardy has not demonstrated cause and prejudice to excuse the default. Moreover, the Michigan Court of Appeals' conclusion that Richard's testimony would have made no difference in the outcome of Hardy's case was not unreasonable, given the "overwhelming" evidence of his guilt. *Hardy*, 2011 WL 4810772, at *2. This objection is without merit and will be overruled.

**38.**

Hardy's final objection is that his trial counsel was ineffective because he failed to "have either child evaluated by independent experts" by filing a motion requesting that relief. Pet'r's Objs. ¶ 38. This claim, like many of his prior objections, was never presented to the Michigan courts on direct review and so is defaulted. Hardy has not established cause and prejudice to excuse the default. This objection will be overruled.

**IV.**

Accordingly, it is **ORDERED** that Hardy's objections, ECF No. 21, are **OVERRULED**.

It is further **ORDERED** that Judge Komives' report and recommendations, ECF No. 18, is **ADOPTED**.

It is further **ORDERED** that Hardy's petition for habeas corpus, ECF No. 1, is **DISMISSED**.

It is further **ORDERED** that Hardy's motion for bond, ECF No. 15, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is

**DENIED**. This is a final order and closes the case.

Dated: January 29, 2015                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

<table>
<tr><td align="center">PROOF OF SERVICE</td></tr>
</table>

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney of record herein by electronic means and upon
Phillip Hardy #749710, at G-3331 Augusta Street, Flint MI 48532 by
first class U.S. mail on January 29, 2015.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS